# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3149

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Northern District of Iowa. |
| Veronica Mosley, | * |
| | * |
| Appellant. | * |

_____

Submitted:  May 16, 2007
Filed:  October 12, 2007 (corrected 10/16/07)
(corrected 11/14/07)

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Veronica Mosley pled guilty to aiding and abetting armed bank robbery, in violation of 18 U.S.C. §§ 2, 2113(a), (d).  The district court sentenced her to 135 months' imprisonment.  On appeal, Mosley contends that the government breached a plea agreement between the parties when it argued at sentencing that Mosley failed to accept responsibility because of false statements she made to authorities prior to the plea agreement.  We agree that there was a breach, and in accordance with governing precedent, we thus vacate Mosley's sentence and remand for resentencing by a different judge.

# I.

On October 6, 2005, Mosley and four others participated in an armed bank robbery in Iowa Falls, Iowa. Mosley was arrested on October 6, the day of the robbery, and gave two interviews to FBI agents. On October 14, 2005, Mosley took part in a proffer interview in which she gave statements to an FBI agent and an Assistant United States Attorney about her involvement in the bank robbery. A grand jury later returned a four-count Superceding Indictment against Mosley and four co-defendants, charging them with violations of federal law in connection with the robbery. Pursuant to a plea agreement, Mosley pled guilty to aiding and abetting armed bank robbery under Count Two of the Superceding Indictment. (R. Doc. 89-2, Plea Agreement at ¶1). Mosley admits that she made misleading statements during the proffer interviews by minimizing her involvement in the robbery, but she contends that the government was aware of her deception before it reached the plea agreement.

Mosley's plea agreement contained a provision regarding her entitlement to an adjustment for acceptance of responsibility under USSG § 3E1.1. That provision states:

> The parties stipulate and agree, that as of the date of this agreement, defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. However, the government shall be free to contest the adjustment under USSG § 3E1.1(a) should the defendant subsequently fail to continue to accept responsibility by failing to pay the special assessment; by providing false information to the court, the probation office, or the government; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this plea agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with, the granting of the adjustment under USSG § 3E1.1(a).

(Plea Agreement at ¶ 7B).  The agreement goes on to state that "[t]he parties make no other stipulations regarding offense level adjustments or guideline enhancements." (*Id.* at ¶ 8).

The district court accepted Mosley's guilty plea, and the United States Probation Office prepared a Presentence Investigation Report ("PSR").  The PSR recommended no upward adjustment for obstruction of justice under USSG § 3C1.1, and recommended that Mosley receive a two-level downward adjustment for acceptance of responsibility under § 3E1.1(a).  The government responded with a letter to the probation office, stating in part that "[t]he United States has developed new information that sheds a different light on defendant's sentencing."  (PSR Addendum, Govt. Letter at 1). The letter outlined allegations that Mosely played a prominent role in the robbery and was involved in obtaining a gun that was used in commission of the crime.  According to the letter, "[t]his information is contrary to information Mosley conveyed in an October 6, 2005 interview after her arrest and contrary to a proffer she gave on October 14, 2005."  (*Id*. at 3).  The letter then announced the government's objections to the PSR's recommendations on obstruction of justice, acceptance of responsibility, and role in the offense.  It concluded by arguing that "[d]efendant obstructed justice and, therefore, has not accepted responsibility."  (*Id*.)

Through her attorney, Mosely responded with a letter to the probation office. That letter, dated April 27, 2006, objected to the PSR's recommendation of a six-level enhancement for use of a firearm, and said that Mosley "denies knowledge of the use of any firearm in this offense."  (*Id*., Mosley Letter at 1).  The letter also denied the government's claims that Mosley was a leader or organizer of the robbery, and that she was involved in obtaining a gun.

The parties next submitted sentencing memoranda to the district court.  The government's memorandum stated that Mosley "obstructed justice by lying to

-3-

investigators shortly after her arrest and during a proffer interview with counsel and the government." (R. Doc. 158 at 2). The government urged that "[s]ince defendant obstructed justice, she is not entitled to an acceptance of responsibility reduction." (*Id.* at 3). Mosley's memorandum, in reply, claimed that "the government now seeks to withdraw from [the] plea agreement without valid justification or cause," and asked the district court to "compel specific performance of the plea agreement by the government." (R. Doc. 157-2 at 2). The defense reiterated this position at the sentencing hearing, where it also requested that the district court assign the case to a different judge for sentencing.

At the two-day sentencing hearing, the district court heard evidence in support of the government's position that Mosley lied in her pre-plea statements to authorities, and that she therefore obstructed justice and failed to accept responsibility. The court ultimately ruled that the plea agreement precluded the government from arguing that Mosley failed to accept responsibility based on these pre-plea statements, and ordered specific performance of the agreement. But the court found that the government did not breach the plea agreement, because rather than making an argument about whether Mosley was entitled to acceptance of responsibility, the government had "only argued about how to interpret" the agreement. The court thus denied Mosley's request that the case be reassigned to another judge for sentencing. The court further ruled that even though the government could not use Mosley's pre-plea statements to argue that she failed to accept responsibility, it could use these statements to argue that she obstructed justice. Moreover, the court held, the government could use Mosley's *post-plea* statements to argue both that she obstructed justice and that she failed to accept responsibility.

The court concluded that Mosley obstructed justice in her letter of April 27, 2006, to the probation office, a post-plea statement in which Mosley falsely "denied her role in obtaining the firearm and its use in the armed bank robbery." Because she "provided materially false information" to a probation officer in respect to a

-4-

presentence investigation, the court applied a two-level upward adjustment for obstruction of justice under USSG § 3C1.1. The court also concluded that Mosley failed to qualify for a two-level reduction for acceptance of responsibility, because in her letter to the probation office, she falsely denied relevant conduct, namely, her role in obtaining the firearm. *See* USSG § 3E1.1, comment. (n.1(a)).

After adjusting the offense level upward six levels for use of a firearm, and declining to make a four-level upward adjustment for role in the offense, the district court determined that Mosley had an adjusted offense level of thirty-two and Criminal History Category of I, for an advisory guideline range of 121-151 months. The court evaluated the factors set forth in 18 U.S.C. § 3553(a), and sentenced Mosley to 135 months' imprisonment. Mosley appeals her sentence, arguing that the district court erred by allowing the government to argue for a two-level adjustment for obstruction of justice and against a two-level adjustment acceptance of responsibility based on her pre-plea statements.

## II.

### A.

We review questions regarding the interpretation and enforcement of plea agreements *de novo*. Where a plea agreement has been accepted by the court, we generally interpret the meaning of the terms in the agreement according to basic principles of contract law. *United States v. Norris*, 486 F.3d 1045, 1051 (8th Cir. 2007) (en banc) (plurality opinion); *id.* at 1054 (concurring opinion).

In the plea agreement, "[t]he parties stipulate and agree, that as of the date of this agreement, defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility." (Plea Agreement at ¶ 7B). The agreement preserves the government's right to contest the adjustment "should the defendant subsequently

fail to continue to accept responsibility." (*Id.*). We agree with the district court that these provisions prohibit the government from arguing that Mosley failed to accept responsibility based on her pre-plea statements. In exchange for Mosely's guilty plea, the government promised to take the position that she had accepted responsibility at the time of the plea agreement. Any argument that Mosley failed to accept responsibility because of actions taken before signing the agreement would conflict with the government's promise, and would therefore breach the agreement.

We also conclude that the government breached the agreement by making this prohibited argument. In its letter to the probation office objecting to portions of the PSR, the government stated that Mosley "obstructed justice and, therefore, *has not accepted responsibility*," because she made false statements in her pre-plea interviews. (PSR Addendum, Gov't Letter at 3) (emphasis added). In its opening sentencing memorandum to the district court, the government argued that Mosley "obstructed justice by lying to investigators shortly after her arrest and during a proffer interview with counsel and the government," (R. Doc. 158 at 2), and concluded that "[s]ince defendant obstructed justice, *she is not entitled to an acceptance of responsibility reduction*." (*Id.*) (emphasis added). At the sentencing hearing, the government reiterated its position, (S. Tr. 11), and offered evidence that Mosley had given false statements to authorities prior to the plea agreement. We do not think that these were merely arguments about "how to interpret" the agreement. These were arguments that Mosley was not entitled to acceptance of responsibility because of her pre-plea statements. As such, the arguments breached the plea agreement. *See United States v. McCray*, 849 F.2d 304, 305-06 (8th Cir. 1988) (per curiam).

At oral argument on appeal, the government offered another theory to explain why its actions were not a breach. It contends that once Mosley submitted false information to the probation office, she "fail[ed] to continue to accept responsibility," (Plea Agreement at ¶ 7B), and the government was therefore free to contest acceptance of responsibility by using any evidence, including Mosley's pre-plea

statements. Even if we accepted this interpretation of the agreement, it would not win the day, because the government had breached the agreement even before Mosley sent her letter to the probation office. In its objections to the PSR, the government argued that Mosley should be denied an adjustment for acceptance of responsibility based on her pre-plea statements. But we also find unpersuasive the government's argument based on the language of the agreement. The more natural reading of the provision concerning the defendant's failure "to continue to accept responsibility" is that the government may contest the adjustment based on *subsequent acts* of the defendant that are inconsistent with the previous agreement that the defendant accepted responsibility. To the extent there is ambiguity in this provision, we are constrained to construe it against the government. *See United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc). Therefore, we agree with the district court that the government could not use Mosley's pre-plea statements to argue that she failed to accept responsibility.

## B.

It is undisputed that the government's stipulation that Mosley was entitled to an adjustment for acceptance of responsibility was part of the inducement for her plea. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971); *see also Mabry v. Johnson*, 467 U.S. 504, 509 (1984). After the district court has accepted a guilty plea, the government's material breach of the plea agreement violates the defendant's due process rights. *Norris*, 486 F.3d at 1048 (plurality opinion). We turn, therefore, to the proper remedy.

The record suggests that the district court likely would have arrived at the same sentence, regardless of whether the government breached the plea agreement. The district court itself recognized that the government could not contest acceptance of

responsibility based on Mosley's pre-plea statements, and the court articulated its decision to deny the adjustment based entirely on Mosley's actions after entry of her guilty plea. Mosley does not dispute that the district court may properly consider her post-plea conduct in determining whether she has accepted responsibility, but she contends that the government's breach of the agreement nonetheless requires a new sentencing proceeding. We are constrained by precedent to conclude that the government's breach of the plea agreement is not subject to traditional harmless-error analysis, and that a remand for resentencing is required.

In *Santobello*, the prosecution breached a plea agreement by recommending the maximum sentence, after it had promised to make no sentencing recommendation. The Supreme Court vacated the defendant's sentence and remanded to the state courts to determine whether the proper remedy was withdrawal of the defendant's guilty plea or resentencing before a different judge. In so doing, the Court stated:

> We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. *He stated that the prosecution's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.*

404 U.S. at 262-263 (emphasis added).

By holding that it was immaterial whether the prosecution's breach influenced the trial judge's decision, *Santobello* necessarily rejected the view that the prosecution's breach could have been harmless. This is how we interpreted *Santobello* in *McCray*, 849 F.2d at 305-306, and it is also the consensus view among our sister circuits, which hold that harmless-error analysis does not apply when the government breaches a plea agreement. *See United States v. Canada*, 960 F.2d 263,

271 (1st Cir. 1992); *United States v. Vaval*, 404 F.3d 144, 154-155 (2d Cir. 2005); *Dunn v. Colleran*, 247 F.3d 450, 461-462 (3rd Cir. 2001); *United States v. Peglera*, 33 F.3d 412, 414 (4th Cir. 1994); *United States v. Saling*, 205 F.3d 764, 766-767 (5th Cir. 2000); *Cohen v. United States*, 593 F.2d 766, 771-772 (6th Cir. 1979); *United States v. Fields*, 766 F.2d 1161, 1170 n.3 (7th Cir. 1985); *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000); *United States v. Hawley*, 93 F.3d 682, 693-694 (10th Cir. 1996); *United States v. Foster*, 889 F.2d 1049, 1055-1056 & n.6 (11th Cir. 1989); *accord United States v. DeWitt*, 366 F.3d 667, 671-672 (8th Cir. 2004); *United States v. Van Horn*, 976 F.2d 1180, 1183-84 (8th Cir. 1992). One decision from our court does affirm a sentence, despite a breach by the government, on the view that the breach had "little if any effect" on the district court's decision. *United States v. Goings*, 200 F.3d 539, 544 (8th Cir. 2000). The *Goings* opinion, however, does not address *Santobello*, and we believe it is inconsistent with *Santobello* and our earlier precedents in *McCray* and *Van Horn*.[1]

---

[1]Just before this opinion was transmitted for filing, another panel of this court relied on *Goings* to hold that the government's breach of a plea agreement did not require resentencing. *United States v. E.V.*, No. 06-2906, 2007 WL 2683023, at *6 (8th Cir. Sept. 14, 2007). At the same time, however, the *E.V.* panel acknowledged the "general rule" that the government's breach is not ameliorated by a district court's statement that it was not influenced by the breach. *Id*. at *6 n.13 (citing *McCray*, 849 F.3d at 305-06). The *E.V.* panel nonetheless thought the "general rule" inapplicable in that case, because "the possible influence of the breach [was] confined by both the Sentencing Guidelines and other statutory restraints." *Id*. Other courts have identified "exceptions" to the general rule that harmless-error analysis does not apply, in situations where (1) the government breaches the agreement by *failing to do something* it has promised, but then fully cures its breach through specific performance of its obligation, *Vaval*, 404 F.3d at 155, (2) the breach is so minor that despite the breach, the defendant's reasonable expectations under the agreement are fulfilled, *id.*, and (3) the district court already has imposed the lowest sentence possible, such that resentencing would be meaningless. *United States v. Belt*, 89 F.3d 710, 713 (10th Cir. 1996). None of these potential exceptions is applicable here.

Whether the Supreme Court today would follow *Santobello*'s rejection of harmless-error analysis is open to question. The Court has made clear that "most constitutional errors can be harmless," *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991), and only a "very limited class" of errors, called "structural" errors, are an exception to this general rule. *Neder v. United States*, 527 U.S. 1, 8 (1999). The Court has identified a small number in that category: denial of counsel (including counsel of choice), denial of the right to self-representation, denial of a public trial, a defective reasonable-doubt instruction, race-based discrimination in jury selection, and a biased judge. *See United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2564 (2006); *Neder*, 527 U.S. at 8. These errors "affect[] the framework within which the trial proceeds," and are not "simply . . . error[s] in the trial process itself." *Fulminante*, 499 U.S. at 310. The Third Circuit has suggested obliquely that *Santobello* should be understood as identifying a structural error, *Dunn*, 247 F.3d at 462, but we have indicated more recently that the class of structural errors likely is limited to those expressly identified by the Supreme Court in *Fulminante* and *Neder*. *See United States v. Allen*, 406 F.3d 940, 944 (8th Cir. 2005) (en banc); *but cf. Gonzalez-Lopez*, 126 S. Ct. at 2564 (expanding list of structural errors to encompass denial of counsel of choice). Where, as here, the district court consciously refrains from considering the government's improper argument, it is not readily apparent why the breach should be considered among the limited class of errors whose consequences are "necessarily unquantifiable and indeterminate," *Gonzalez-Lopez*, 126 S. Ct. at 2564 (internal quotation omitted), or that "necessarily render" the proceedings "fundamentally unfair" to the accused. *Rose v. Clark*, 478 U.S. 570, 577 (1986).[2]

_____

[2]Others have suggested that *Santobello* announced a necessary "prophylactic rule," because a district judge cannot erase from her mind damaging information that resulted from the government's breach. *Foster*, 889 F.2d at 1055-1056 n.6. This strikes us as a curious explanation, given that the first act of a new sentencing judge assuming the case on remand presumably would be to read the opinion of the court of appeals, which recounts the government's breach as the reason for the

Nonetheless, *Santobello* says what is says. The Supreme Court has made clear that "if a precedent of [the] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). The decisions of the Supreme Court "remain binding precedent until [the Court] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 252-253 (1998). Accordingly, following *Santobello* and circuit precedent, we conclude that harmless-error analysis does not apply.

Mosley seeks specific performance of the plea agreement, so the appropriate procedure is to remand to the district court for resentencing. *See Santobello*, 404 U.S. at 263 (stating that possible remedies include specific performance or withdrawal from plea). *Santobello* held that the defendant in that case "should be resentenced by a different judge." *Id.* We adopted this approach in *McCray*, 849 F.2d at 305-06, and have followed it on several occasions since then. *United States v. Thompson*, 403 F.3d 1037, 1041 (8th Cir. 2005); *DeWitt*, 366 F.3d at 671; *Van Horn*, 976 F.2d at 1183-84; *Brunelle v. United States*, 864 F.2d 64, 65 (8th Cir. 1988) (per curiam); *but see United States v. Johnson*, 241 F.3d 1049, 1055 (8th Cir. 2001) (remanding to district court with no mention of reassignment); *United States v. Van Thournout*, 100 F.3d 590, 596 (8th Cir. 1996) (same). While some courts have held that resentencing by a different judge is not always necessary, *see United States v. Wolff*, 127 F.3d 84, 87 (D.C. Cir. 1997); *United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir. 1984); *United States v. Bowler*, 585 F.2d 851, 856 (7th Cir. 1978), most circuits interpret *Santobello* to require that a different judge must sentence the defendant on remand. *Canada*, 960 F.2d at 271; *Vaval*, 404 F.3d at 155; *United States v. Rivera*, 357 F.3d 290, 297 (3rd Cir. 2004); *Peglera*, 33 F.3d at 415; *Saling*, 205 F.3d at 768; *United States v. Fitch*,

---

reassignment.

282 F.3d 364, 368 (6th Cir. 2002); *Mondragon*, 228 F.3d at 981; *United States v. Cachucha*, 484 F.3d 1266, 1271 (10th Cir. 2007); *Foster*, 889 F.2d at 1056; *see also Wolff*, 127 F.3d at 89-90 (Randolph, J., concurring in part and dissenting in part).

In accord with our earliest precedent in *McCray*, we follow the majority approach here, and conclude that the case should be remanded to a different judge for resentencing. "We emphasize that this is in no sense to question the fairness of the sentencing judge," *Santobello*, 404 U.S. at 263, who in this case correctly identified how the government should have limited its advocacy in accordance with the plea agreement. At resentencing, the government is not forbidden to contest Mosley's eligibility for an adjustment under USSG § 3E1.1, but it must rest any such argument on Mosley's post-plea conduct alone.

\* \* \*

For the foregoing reasons, the sentence is vacated. The case is remanded to the district court with directions that the case be reassigned to a different judge for resentencing.

_____