# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2878

_____

Rebecca J. Wall, individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Richard W. Stanek, in his official capacity only

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 14, 2015
Filed: July 21, 2015

_____

Before RILEY, Chief Judge, BRIGHT and MURPHY, Circuit Judges.

_____

RILEY, Chief Judge.

This case requires us to rule upon the validity of a suspected impaired driver's consent to a blood-alcohol test when the driver was correctly informed beforehand that it is a crime to refuse the test. Having agreed to a blood-alcohol test under these circumstances, Rebecca Wall now brings a 42 U.S.C. § 1983 action against Hennepin County Sheriff Richard Stanek in his official capacity (county), alleging the county had a policy or practice of conducting warrantless, nonconsensual blood-alcohol tests,

which violated Wall's Fourth Amendment rights. The district court[1] disagreed, finding no constitutional violation and no county liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). Wall appeals, and we affirm.

## I.    BACKGROUND

### A.    Facts

At approximately 1:00 a.m. on June 20, 2011, Hennepin County Sheriff's Deputy Barbara Russeth stopped Wall for a traffic violation. Upon her exiting the vehicle, Wall smelled of alcohol, exhibited poor balance, failed multiple field sobriety tests, and in a preliminary breath test, she produced a blood-alcohol concentration (BAC) of .109—beyond the .08 legal threshold, see Minn. Stat. § 169A.20, subd. 1(5). Based on these results, Deputy Russeth arrested Wall and arranged for her car to be towed.

At around 1:40 a.m., they arrived at patrol headquarters, where Deputy Russeth sought Wall's consent to conduct a urine or blood test[2] to determine Wall's BAC. In compliance with Minnesota's Implied Consent Law, see Minn. Stat. § 169A.51, subd. 2, Deputy Russeth read aloud the state's "implied consent advisory," informing Wall that (1) she was arrested on suspicion of driving while impaired, (2) "Minnesota law require[d her] to take a test" of alcohol content, (3) "[r]efusal to take a test [wa]s a crime," and (4) "[b]efore making [he]r decision about testing, [she] ha[d] the right to

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]Wall does not question Deputy Russeth's insistence that Wall take a urine or blood test as opposed to a less intrusive, additional breath test. See, e.g., Minn. Stat. § 169A.51, subd. 3 (permitting the officer to "direct whether the test is of blood, breath, or urine," but generally prohibiting the officer from singling out either blood or urine as the *sole* test). The record does not disclose the differences in availability or efficacy of the three tests.

consult with an attorney." Affirming her understanding of her rights and disclaiming her right to consult an attorney, Wall agreed to a urinalysis.

After about forty-five minutes, Wall had not produced a urine sample, so Deputy Russeth transported Wall to the Hennepin County Medical Center where Wall agreed, at 2:58 a.m., to a blood analysis. Deputy Russeth then instructed a registered nurse to draw a blood sample. Analysis of the sample indicated a BAC of .06. Wall pled guilty to a petty misdemeanor traffic violation and her DWI charge was dismissed.

### B.     Procedural History

Wall brought this lawsuit, alleging the county had a policy or custom of conducting warrantless, nonconsensual blood-alcohol tests in violation of the Fourth Amendment. The county filed a motion for summary judgment, arguing Wall had voluntarily consented to the blood draw. Following the reasoning of the Minnesota Supreme Court in State v. Brooks, 838 N.W.2d 563, 565, 572 (Minn. 2013), the district court agreed that Wall's consent made the blood draw constitutional and granted summary judgment in the county's favor. Wall timely appealed.

## II.     DISCUSSION

"'On appeal, this court reviews grants of summary judgment de novo, and reviews the evidence and all reasonable inferences in the light most favorable to the nonmoving party.'" Nw. Airlines, Inc. v. Prof'l Aircraft Line Serv., 776 F.3d 575, 578 (8th Cir. 2015) (quoting Moody v. Vozel, 771 F.3d 1093, 1096 (8th Cir. 2014)). For the county to be liable, Wall must prove its policies or customs caused a violation of her constitutional rights. See Monell, 436 U.S. at 691-92. Absent a constitutional violation, "there can be no liability for the county." Hawkins v. Gage Cnty., Neb., 759 F.3d 951, 959 (8th Cir. 2014).

The Fourth Amendment protects against intrusions upon a person's "'legitimate expectation of privacy,'" which exists where "the individual, by h[er] conduct, has 'exhibited an actual (subjective) expectation of privacy'" and this expectation "is 'one that society is prepared to recognize as reasonable.'" Smith v. Maryland, 442 U.S. 735, 740 (1979) (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). No one questions Wall's subjective expectation of privacy over her own blood, and all agree Wall's blood draw "infringe[d] an expectation of privacy that society is prepared to recognize as reasonable," as did "[t]he ensuing chemical analysis of the sample to obtain physiological data." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 616 (1989).

The real question at issue is whether this "search[]" was truly "unreasonable." U.S. Const. amend. IV; see also Skinner, 489 U.S. at 619 ("[T]he Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable."). "What is reasonable, of course, 'depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself,'" which entails "'balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" Skinner, 489 U.S. at 619 (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985), and Delaware v. Prouse, 440 U.S. 648, 654 (1979)).

A consent search is reasonable under the Fourth Amendment. See Fernandez v. California, 571 U.S. ___, ___, 134 S. Ct. 1126, 1132 (2014). The county has provided undisputed evidence showing Wall consented to the blood draw after she was unable to produce a urine sample. See Der v. Connolly, 666 F.3d 1120, 1128 (8th Cir. 2012) (explaining the defendant only has the burden of producing evidence of consent in § 1983 actions). Because Wall challenges the validity of this consent, she bears the burden of proving her "will [was] overborne and h[er] capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); see also Der, 666 F.3d at 1128 ("[T]he ultimate risk of nonpersuasion must

-4-

remain squarely on the plaintiff." (quotation omitted)). Wall endeavors to do this not by focusing on the circumstances, surroundings, or manner of Deputy Russeth's request, but by contending that the choice between consent and punishable refusal, see Minn. Stat. § 169A.20, subd. 2, placed Wall in an unconstitutional dilemma.

The United States Supreme Court has previously examined the dilemma created by similar implied consent laws. In South Dakota v. Neville, 459 U.S. 553 (1983), the Supreme Court addressed the constitutionality of South Dakota's implied consent statute, under which the price of refusing a blood-alcohol test was the one-year revocation of a suspect's license (after a hearing) and the ability to use the suspect's refusal against him at trial. See id. at 559-60. As to the license revocation, the Court decided this penalty was "unquestionably legitimate, assuming appropriate procedural protections." Id. at 560. The Court also determined that the Fifth Amendment did not preclude the state from using the defendant's refusal against him at trial, because "[t]he simple blood-alcohol test is so safe, painless, and commonplace" that "the State could legitimately compel the suspect, against his will, to accede to the test." Id. at 563. "Given . . . that the offer of taking a blood-alcohol test is clearly legitimate," the Court reasoned that "the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice." Id.

Minnesota goes a step further by imposing *direct* criminal consequences on refusal. See Minn. Stat. § 169A.20, subd. 2. The reasoning in Neville, however, gave no apparent regard to the harshness of "the attendant penalties for making th[e] choice" to refuse a test. Neville, 459 U.S. at 563. And the challenged law in Neville also imposed criminal consequences on a suspect's refusal—the state could convict the suspect of a DWI using the refusal as evidence of impaired driving. See id. at 560, 562-63.

-5-

The recent four-Justice plurality opinion in Missouri v. McNeely, 569 U.S. ___, 133 S. Ct. 1552 (2013), addressed the concern that "applying the traditional Fourth Amendment totality-of-the-circumstances analysis to determine whether an exigency justified a warrantless search will undermine the governmental interest in preventing and prosecuting drunk-driving offenses." Id. at ___, 133 S. Ct. at 1565-66. The plurality emphasized that while the balance of state interests against private interests in bodily integrity did not justify a *per se* exigent circumstance exception to the Fourth Amendment, states still "have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws." Id. at ___, 133 S. Ct. at 1564-66. "For example," the plurality explained, "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense" and "impose significant consequences when a motorist withdraws consent." Id. at 1566.

Though Wall's straightforward coercion argument has some appeal, the general principles upon which she relies bend to the Supreme Court's specific guidance on implied-consent laws. Cf. United States v. Mosley, 505 F.3d 804, 811 (8th Cir. 2007) ("The Supreme Court has made clear that 'if a precedent of [the] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the] Court the prerogative of overruling its own decisions.'" (alterations in original) (quoting Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989))).

The Supreme Court "has repeatedly lamented" "[t]he carnage caused by drunk drivers" and the "tragic frequency" with which drunk drivers appear "on our Nation's highways." Neville, 459 U.S. at 558; see, e.g., McNeely, 569 U.S. at ___, 133 S. Ct. at 1565 (plurality opinion) ("While some progress has been made, drunk driving

continues to exact a terrible toll on our society."); Breithaupt v. Abram, 352 U.S. 432, 439 (1957) ("The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield.").

And while a blood draw is unquestionably a "search" which implicates important "'deep-rooted'" privacy interests, McNeely, 569 U.S. at ___, 133 S. Ct. at 1558 (majority opinion) (quoting Winston v. Lee, 470 U.S. 753, 760 (1985)), the Court has "said also that the intrusion occasioned by a blood test is not significant, since such 'tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.'" Skinner, 489 U.S. at 625 (quoting Schmerber v. California, 384 U.S. 757, 771 (1966)); see, e.g., Neville, 459 U.S. at 563 ("The simple blood-alcohol test is . . . safe, painless, and commonplace."); Breithaupt, 352 U.S. at 436 ("The blood test procedure has become routine in our everyday life."). As "a highly effective means of determining the degree to which a person is under the influence of alcohol," Schmerber, 384 U.S. at 771, the Court has "confirmed 'society's judgment that blood tests do not constitute an unduly extensive imposition on an individual's privacy and bodily integrity,'" Skinner, 489 U.S. at 625 (quoting Winston, 470 U.S. at 762), and recognizes "that medically drawn blood tests are reasonable in appropriate circumstances," McNeely, 569 U.S. at ___, 133 S. Ct. at 1565 (plurality opinion). The discussions of implied consent laws in Neville and in the McNeely plurality opinion support the conclusion that such "appropriate circumstances" were present here.

By choosing to "drive[] . . . a motor vehicle within [Minnesota]," Wall was deemed by Minnesota law to have initially "consent[ed] . . . to a chemical test of [her] blood, breath, or urine for the purpose of determining the presence of alcohol." Minn. Stat. § 169A.51, subd. 1(a). Consistent with Minnesota's implied consent law, Deputy Russeth only requested a fluid sample after Wall failed numerous field tests,

-7-

including a preliminary breath test, giving Deputy Russeth probable cause to suspect Wall was driving while impaired. See id. § 169A.51, subd. 1(b)(4) ("The test may be required of a person when an officer has probable cause to believe the person was driving [while impaired] . . . and . . . the screening test . . . indicated an alcohol concentration of 0.08 or more."). In requesting Wall's consent, Deputy Russeth read Minnesota's implied consent advisory, asking Wall to decide between consent and refusal and explaining she could first consult an attorney. See id. § 169A.51, subd. 2(a).

"[T]he choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make[, b]ut the criminal process often requires suspects and defendants to make difficult choices." Neville, 459 U.S. at 564. Wall's choice was undoubtedly difficult in view of the penalties of refusal, but the implied consent procedure is an important "legal tool[]" states have at their disposal "to enforce their drunk-driving laws and secure BAC evidence." McNeely, 569 U.S. at ___, 133 S. Ct. at 1566 (plurality opinion). Wall's dilemma, alone, does not satisfy her burden of nullifying her otherwise uninhibited consent. See Der, 666 F.3d at 1128.

## III.   CONCLUSION

Finding no Fourth Amendment violation, we affirm the district court's grant of summary judgment in the county's favor.

_____