In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3225

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC MARCEL MBOULE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 18-cr-20054 — **Colin S. Bruce**, *Judge.*

ARGUED NOVEMBER 9, 2021 — DECIDED JANUARY 14, 2022

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges.*

KANNE, *Circuit Judge.* Defendant Eric Mboule was charged with conspiracy to commit wire fraud and entered a plea agreement that contained a waiver of the right to appeal. Nonetheless, Mboule has appealed, raising arguments regarding the district court's denial of his motion to withdraw his guilty plea and various purported problems with his sentence. Because Mboule has not shown that the plea agreement

should be voided in its entirety, the appellate waiver is applicable, and this appeal will be dismissed.

## I. BACKGROUND

Mboule was charged with one count of conspiracy to commit wire fraud for working with his co-conspirator, Patrick Guentangue, to defraud the University of Illinois Urbana-Champaign of $265,193.75. In the summer of 2016, an individual purporting to work for Williams Brothers Construction, a contractor of the university, convinced a university employee to transfer that amount to a bank account owned by Guentangue. After Guentangue was arrested, he explained to law enforcement that he had set up the account on Mboule's instructions and that Mboule told him to expect a wire totaling $265,000. Guentangue received approximately twenty-five percent of the proceeds with the remaining funds being distributed according to Mboule's instructions. Mboule and Guentangue had conducted similar frauds on several occasions prior to this one.

After he was charged, Mboule signed a cooperation agreement with the government in which he promised to provide complete and truthful information regarding his criminal conduct in exchange for the government informing the court of Mboule's cooperation in any sentencing hearing.

Mboule also agreed to plead guilty pursuant to a plea agreement. In pertinent part, the plea agreement provided that Mboule was entitled to a 2-level reduction in his offense level because, "based upon the facts currently known by the United States," he had "clearly demonstrated a recognition and affirmative acceptance of personal responsibility." The plea agreement nonetheless did not "preclude the United

States from changing its position if new evidence to the contrary is discovered or if the defendant later demonstrates a lack of acceptance of personal responsibility in the opinion of the United States."

The plea agreement contained the following provisions regarding Mboule's cooperation:

> 18. As a condition of this entire Plea Agreement, the defendant will cooperate fully with law enforcement officials as set forth in a cooperation letter attached hereto … . All information and testimony given by the defendant must at all times be complete and truthful. This means, for instance, that the defendant must neither minimize the defendant's own actions nor fabricate or exaggerate anyone else's actions or involvement. The defendant's status does not hinge upon obtaining a conviction against anyone else; it is dependent solely upon the defendant being truthful about the facts whatever those may be.
>
> 19. The defendant agrees that if the defendant violates the above cooperation terms, the United States will be completely released from all of its obligations under this Plea Agreement. The defendant agrees, however, that under such a circumstance the defendant will not be allowed to withdraw from any previously accepted guilty plea.

Similar to paragraph 19, paragraph 39 provided that if Mboule breached the plea agreement, the government would have "the option to declare the plea agreement null and void" and would be "released from all of its obligations," but Mboule would "not be allowed to withdraw from any previously accepted guilty plea" in that event.

Finally, the plea agreement contained an appellate waiver: "[I]n exchange for the United States' recommendations and/or concessions in this agreement, <u>the defendant waives all rights to appeal and/or collaterally attack the defendant's conviction and sentence</u>," including "the manner and/or method the district court uses to determine, impose, announce, and/or record the sentence." The waiver did not apply to "claim[s] that the defendant received ineffective assistance of counsel."

Earlier on the day of his July 31, 2019 change-of-plea hearing, Mboule participated in a pre-plea proffer session with an FBI agent. At that session, Mboule broke his promise to provide complete and truthful information to the government. He claimed (1) that he had no idea why his co-conspirator called him to tell him that there was an available account to use, and (2) that the University of Illinois incident was the first time he was involved in moving fraudulently obtained money. The agent showed Mboule his own text messages that contradicted this information, but Mboule stuck to his story.

Following the change-of-plea hearing, at which the magistrate judge engaged in a colloquy with Mboule about his guilty plea, the magistrate judge entered a report recommending that the district court accept Mboule's plea as knowing and voluntary. The district judge adopted the report and accepted Mboule's plea on September 9, 2019.

Mboule's sentence was determined over the course of three hearings. At the initial sentencing hearing, held on January 13, 2020, the government stated that it objected to the presentence investigation report's acceptance-of-responsibility recommendation "based on information that [it] subsequently learned." The district court heard testimony from the

FBI agent that Mboule lied to him during the proffer session, in breach of the cooperation agreement. It also heard testimony from a victim of a different wire fraud that Mboule committed during the summer of 2016. Sentencing proceedings resumed on September 21, 2020. The district court concluded that the evidence from the first sentencing hearing established that Mboule "violated that portion of his plea agreement concerning cooperation in that he engaged in that fraudulent activity."

After that hearing, Mboule, represented by a new lawyer, filed a motion to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). The motion stated that Mboule's previous trial counsel failed to inform Mboule that he could "enter[] an open plea of guilty," leaving Mboule to believe that his only options were to "proceed with trial or plead guilty pursuant to a plea agreement." The district court denied the motion without holding an evidentiary hearing. In its order, the court observed that Mboule did not express dissatisfaction with his attorney or a desire to cancel the plea agreement "until immediately after the January 13, 2020, hearing, where [Mboule] first saw the consequences of his lies."

At the third and final sentencing hearing, held on November 6, 2020, the district court resolved the remaining sentencing issues and sentenced Mboule to 42 months' imprisonment, which was within the guidelines range of 37 to 46 months, as well as 3 years of supervised release, and ordered him to pay restitution in the amount of $265,193.75. The judge rejected the idea that Mboule had been coerced into pleading guilty and stated that Mboule was simply experiencing "buyer's remorse."

At the end of the hearing, the government expressed uncertainty about whether Mboule's appellate waiver would be effective. When asked whether there was a waiver, the government responded: "There is, Your Honor. It's a little complicated because the [c]ourt also found the defendant violated his plea agreement, so I—I believe it's probably prudent to advise him of appeal rights as if he has not waived them." The district court then advised Mboule of his right to appeal and stated that "[appellate] waivers are generally enforceable. But if you believe that the waiver itself is not valid, you can present that theory to the Court of Appeals if you wish."

Mboule now appeals, challenging the district court's denial of his motion to withdraw his guilty plea and its sentencing determination.

## II. ANALYSIS

Before addressing the substance of Mboule's appeal, we must determine whether he is barred from bringing this appeal at all. When a plea agreement contains a waiver of the right to appeal, our review of the appeal is foreclosed if (1) the appeal falls within the scope of the appellate waiver and (2) the waiver is valid. *United States v. Alcala*, 678 F.3d 574, 577 (7th Cir. 2012).

Again, Mboule agreed to "waive[] all rights to appeal and/or collaterally attack [his] conviction and sentence," including "the manner and/or method the district court uses to determine, impose, announce, and/or record the sentence." The waiver's only exception was for ineffective-assistance-of-counsel claims. Accordingly, Mboule's challenges to the district court's denial of his motion to withdraw his guilty plea and to its sentencing determination fall within the scope of

the waiver. *See United States v. Perillo*, 897 F.3d 878, 883 (7th Cir. 2018) (holding that the defendant's challenges to denial of her motion to withdraw her plea and to restitution order fell within the scope of the appellate waiver, where the defendant had agreed to waive her right to appeal her conviction and sentence).

Turning to the validity of the appellate waiver, we must determine whether Mboule knowingly and voluntarily relinquished his right to appeal. *See Alcala*, 678 F.3d at 578. "To determine whether the plea was knowing and voluntary, we ask 'whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights.'" *Perillo*, 897 F.3d at 883 (quoting *United States v. Kelly*, 337 F.3d 897, 902 (7th Cir. 2003)). If Mboule did not enter the plea agreement knowingly and voluntarily, the appellate waiver cannot bar his claims. *See United States v. Whitlow*, 287 F.3d 638, 640 (7th Cir. 2002) ("We have held time and again that a waiver of appeal stands or falls with the rest of the bargain.").

Mboule asserts that, "because [he] is challenging the knowingness of his guilty plea, the appeal waiver does not preclude appellate review." (Appellant's Br. at 13.) Of course, Mboule must succeed in persuading us that his plea was not knowing before the waiver can be discarded. Mboule argues that he did not knowingly enter the plea agreement because the government did not discuss, at the change-of-plea hearing, Mboule's alleged lies during the proffer session and the consequences that would ensue—namely, that he would be denied the "benefits accruing to him under" the plea agreement (*id.* at 12), including the sentence reduction for acceptance of responsibility. Had he known that the plea agreement would be "reduced to a unilateral waiver of rights," he

maintains that he would not have "agree[d] to such a losing bargain." (*Id.*) Therefore, according to Mboule, the appellate waiver does not bar review of the district court's decision, and he asks us to remand the case for the district court to hold an evidentiary hearing on his motion to withdraw his guilty plea.

We are not persuaded that the plea agreement was not knowing or voluntary. Again, the reason the government went back on its promise to recommend a sentence reduction for acceptance of responsibility was that Mboule lied to the FBI agent during the proffer session, in violation of his promise to cooperate with the government. "At a minimum," as the district court noted, Mboule "understood that his [cooperation] agreement obligated him to tell the truth" between the time when he signed the cooperation agreement and his change-of-plea hearing. And during the change-of-plea hearing, Mboule was informed of the possibility that the government would be "completely released of its obligations under [the plea] agreement" if he "violate[d] the … cooperation terms," but that he still would not be "permitted to withdraw [his] previously accepted guilty plea." Even if Mboule had been ignorant of the potential consequences of his lies at the time he entered his guilty plea, "a plea of guilty does not have to be perfectly informed in order to be voluntary." *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984). Mboule knew he lied to the FBI agent yet still elected to go forward with his guilty plea.

Mboule asserts that if he breached the plea agreement, "the remedy would be to declare the entire agreement—including the appellate waiver—null and void." (Appellant's Reply Br. at 1.) But he does not explain why this is the case.

While Mboule's breach entitled the government to declare the plea agreement null and void, releasing the government from its obligations, the government did not do so here. Indeed, we have cautioned that Rule 11 motions should not be used "to withdraw based on gamesmanship and strategic hindsight." *United States v. Graf*, 827 F.3d 581, 585 (7th Cir. 2016).

As the district court found, "it was not until immediately after the January 13, 2020, hearing, where [Mboule] first saw the consequences of his lies, that he decided he did not want to adhere to the promises he made to the government." That Mboule became aware of these consequences and sought to avoid them by moving to withdraw his guilty plea "do[es] not undermine the voluntary and knowing character of the plea when it was offered and accepted. To the contrary, the filing of such a motion after acceptance of a plea smacks of gamesmanship." *Graf*, 827 F.3d at 586. The district court correctly concluded that "[t]he fact that [Mboule] was caught in these lies does not create a fair and just reason to allow him to withdraw from his duly entered plea." In other words, Mboule may not, by breaking his own promise, get out of the plea agreement altogether.

Moreover, the government's purported breach does not warrant voiding the entire plea agreement, because "[a]lthough there must generally be a 'meeting of the minds' on the essential elements of a plea agreement, a prosecutor is not necessarily bound to recommend a reduction in the sentence for acceptance of responsibility." *United States v. Quintero*, 618 F.3d 746, 751 (7th Cir. 2010). As in *Quintero*, where "[the defendant's] own conduct" in perjuring himself at a co-defendant's trial, in breach of his plea agreement, led the government to "walk away from its recommendation of a

sentence reduction," *id.* at 751–52, the government here backtracked on its recommendation for a sentence reduction because Mboule breached the cooperation agreement in the first place by lying to the FBI agent during the proffer session.

Mboule splits hairs by focusing on the fact that his lies to the FBI agent technically preceded the formation of the plea agreement. He relies on an out-of-circuit case, *United States v. Mosley*, 505 F.3d 804 (8th Cir. 2007), in which the court held that the government breached the plea agreement by relying on the defendant's pre-plea statements to argue that she did not accept responsibility. *Id.* at 808. He contends that, similarly, the government here should not have gone back on its promise to recommend an acceptance-of-responsibility adjustment based on his pre-plea statements at the proffer session. *Mosley*, however, does not support a holding that the plea agreement—and, in turn, the appellate waiver—is void. In *Mosley*, the defendant sought specific performance of the plea agreement, and the court remanded the case to the district court for resentencing by a different judge. *Id.* at 812. "Unless a prosecutor's transgression is so serious that it entitles the defendant to cancel the whole plea agreement, a waiver of appeal must be enforced." *Whitlow*, 287 F.3d at 640. No such transgression occurred here, where the government went back on its promise because Mboule failed to keep up his end of the bargain.

Finally, there were no problems with Mboule's plea colloquy with respect to the appellate waiver. *See Alcala*, 678 F.3d at 578–79 ("In assessing the knowing and voluntary character of a defendant's waiver, the court should lend particular credence to the defendant's representations to the court during his plea colloquy, during which he is obligated to tell the

truth."). The magistrate judge reviewed the plea agreement with Mboule on the record, paragraph by paragraph. In compliance with Rule 11(b)(1)(N), the magistrate judge asked Mboule whether he understood that he was waiving his rights to appeal and to bring a collateral challenge and whether he agreed that it was in his best interest to do so. Mboule said he did. Because Mboule's assurances were made under oath at a plea colloquy, we presume they are correct. *See United States v. Chapa*, 602 F.3d 865, 869 (7th Cir. 2010).

## III. CONCLUSION

In short, Mboule has pointed to no reason that his plea agreement must be voided. Therefore, the appellate waiver remains in place, and his appeal is DISMISSED.