# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3579
_____

United States of America

*Plaintiff - Appellee*

v.

Tommy Tate Collins

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: October 22, 2021
Filed: February 22, 2022
_____

Before ERICKSON, GRASZ, and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Tommy Collins pled guilty to sex trafficking of children, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2). The district court sentenced him to 210 months in prison. Collins appeals, asserting the government breached his plea agreement by, among other things, advocating against an agreed-upon reduction for acceptance of responsibility. We vacate Collins' sentence and remand for further proceedings.

## I.  BACKGROUND

Between January 2018 and February 2019, Collins paid Minor Victim B and Victim One for sex acts with money and drugs.  Collins unsuccessfully attempted to convince Minor Victim B to engage in prostitution with other individuals for his benefit.  Collins also threatened Minor Victim B during an argument about him previously assaulting S.M., a woman with whom he had an intermittent dating relationship.  S.M. obtained a state no-contact order against Collins after the assault.

A grand jury returned an indictment against Collins in May 2019.  Collins was detained pending trial.  Over the next six months, he called Victim One several times with instructions on what to say to law enforcement and with questions about Minor Victim B's whereabouts.  He also called S.M., whom the government anticipated would testify at trial, 46 times despite the no-contact order.

Collins pled guilty on February 7, 2020.  A written plea agreement stipulated that the government would abstain from recommending a guidelines enhancement for obstruction of justice, U.S.S.G. § 3C1.1.  The government additionally agreed to recommend that Collins receive credit for acceptance of responsibility, U.S.S.G. § 3E1.1.  But the government reserved "the right to oppose a reduction under § 3E1.1 if after the plea proceeding Defendant obstructs justice . . . or otherwise engages in conduct not consistent with acceptance of responsibility."  The parties also retained the ability to "make whatever comment and evidentiary offer they deem appropriate at the time of sentencing . . . provided that such offer or comment does not violate any other provision of this Plea Agreement."

After the change of plea hearing, and pursuant to a local administrative order, the district court directed the government to submit an offense conduct statement to the probation office.  The government did so on February 21, 2020.  The statement included a summary of Collins' post-indictment conduct, including his phone calls to S.M. and Victim One.  Shortly before submitting the offense conduct statement, the government learned that Collins had called S.M. twice that same afternoon.  The

statement nonetheless recommended that Collins receive credit for acceptance and no obstruction enhancement.  At the government's request, the district court entered a federal protective order prohibiting Collins from contacting S.M.

Collins called S.M. again on March 18 and March 25, 2020.  The government reacted by sending a revised offense conduct statement that recommended against a reduction for acceptance and in favor of an enhancement for obstruction.  Collins objected to both recommendations as violations of the plea agreement.  In response, the government withdrew its obstruction recommendation but insisted that Collins' pre-plea conduct was still relevant for general sentencing purposes.  The government maintained its opposition to a reduction for acceptance of responsibility.

The Presentence Investigation Report ("PSIR") proposed an enhancement for obstruction of justice and no credit for acceptance of responsibility.  Collins objected to almost all the facts in the PSIR, including the narrative portions of his entire criminal history.  The government answered with a lengthy sentencing memorandum and dozens of exhibits.

The sentencing memorandum detailed Collins' allegedly obstructive conduct dating from the beginning of the case.  While ultimately renouncing an intent to seek an obstruction enhancement, the government expressed that "Collins' attempts to influence witnesses throughout these proceedings are certainly relevant under 18 U.S.C. § 3553(a) and as to his acceptance of responsibility."  The government argued that Collins had forfeited credit for acceptance because he falsely denied relevant conduct and repeatedly called S.M. and Victim One.

Five days prior to sentencing, Collins sought specific performance of the plea agreement.  He contended that the government's sentencing memorandum was inconsistent with the terms of the plea agreement.  The government resisted, specifically denying any breach of the parties' agreement. Specific to acceptance of responsibility, the government claimed that "evidence of pre-plea conduct" was not "barred by the plea agreement."

The district court made clear at the outset of the sentencing hearing that it intended "to hold the government to the bargain they struck as far as" acceptance and obstruction "as of February 7th of 2020." The district court accordingly rejected an enhancement for obstruction, which the government did not pursue at the hearing. As for acceptance, the district court stated: "I think [the government] saw a crack in the door that the defendant made and they stormed through it with everything they had. . . . But that's not, in my view, a breach of the plea agreement." The district court then encouraged defense counsel to speak with Collins about his objections to the PSIR, cautioning that "a lot of the objections he's made can pretty easily be proven to be false." After a recess, Collins withdrew most of his factual objections. At that point, the district court inquired whether the government believed Collins had become entitled to full credit for acceptance of responsibility. The government agreed not to oppose a two-level reduction but declined to move for a discretionary third level off based on the late withdrawal of the objections.

With a two-level reduction for acceptance, Collins' guidelines range became 210-262 months in prison. The district court varied downward by an additional level to a range of 188-235 months because it assumed "the government has an obligation here to move for that third level, but I can't force them to do so, so the sentence that I am imposing is as if the government had so moved." The district court sentenced Collins to a mid-guidelines prison term of 210 months.

## II.    DISCUSSION

The government's breach of a promise that induced a guilty plea violates due process. Santobello v. New York, 404 U.S. 257, 262 (1971). We review *de novo* questions regarding the interpretation and enforcement of a plea agreement. United States v. Selvy, 619 F.3d 945, 949 (8th Cir. 2010). "[W]e generally interpret the meaning of the terms in the agreement according to basic principles of contract law." United States v. Guzman, 707 F.3d 938, 941 (8th Cir. 2013) (citation omitted).

-4-

On appeal, Collins argues that the government breached his plea agreement in numerous ways. We need not address each perceived violation because we discern a clear breach from the government's sentencing memorandum.

The government breached the plea agreement by relying on Collins' pre-plea conduct to dispute acceptance of responsibility. In United States v. Mosley, 505 F.3d 804, 806 (8th Cir. 2007), we interpreted a plea agreement in which the government acknowledged "that as of the date of this agreement, defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility." The government reserved the right to challenge the adjustment "should the defendant subsequently fail to continue to accept responsibility." Id. After the defendant pled guilty, the government learned that she had lied in previous interviews with law enforcement. Id. at 807. The defendant later submitted false information to the probation office as well. Id. The government argued in its sentencing memorandum and at the hearing that the defendant lost entitlement to credit for acceptance due to her conduct both before and after pleading guilty. Id. at 807-08.

We held that the government violated the plea agreement. Id. at 809. In so holding we said, "Any argument that Mosley failed to accept responsibility because of actions taken before signing the agreement would conflict with the government's promise . . . ." Id. at 808. And we expressly rejected the argument that the defendant's post-plea failure to accept responsibility allowed the government to introduce pre-plea conduct to contest the adjustment. Id. at 809.

Here, the government likewise impermissibly used Collins' pre-plea conduct to challenge acceptance of responsibility. At the time Collins entered his plea, the government agreed he qualified for the reduction. Its sentencing memorandum then referenced pre-plea phone calls from Collins to S.M. and Victim One as grounds to deny acceptance. The plea agreement authorized opposition to the adjustment only "if after the plea proceeding Defendant obstructs justice . . . or otherwise engages in conduct not consistent with acceptance of responsibility." As we stated in Mosley, "[t]he more natural reading" of such a reservation clause "is that the government

-5-

may contest the adjustment based on *subsequent acts* of the defendant that are inconsistent with the previous agreement that the defendant accepted responsibility." 505 F.3d at 809. Although the provision here arguably supports an interpretation that would permit the introduction of pre-plea conduct, we must construe ambiguity in a plea agreement against the government. See United States v. Lewis, 673 F.3d 758, 763 (8th Cir. 2011).

The government responds that Collins "got what he bargained for" because the district court ended up applying the same guidelines range established in the plea agreement. When the government violates a plea agreement's conditions, however, we cannot excuse the breach under traditional harmless-error review. See Mosley, 505 F.3d at 810-11 & n.1 (following "Santobello and circuit precedent [to] conclude that harmless-error analysis [did] not apply" when the government breached).

Nor was the breach cured. The government "cites no case where we have held that it may cure the breach of a plea agreement, and we are unaware of any." United States v. Brown, 5 F.4th 913, 916 (8th Cir. 2021). Even if "a cure is possible, other circuits require that the government offer an unequivocal retraction of its erroneous position to sufficiently cure a breach." Id. (quoting United States v. Ligon, 937 F.3d 714, 720 (6th Cir. 2019)) (internal quotation marks omitted). Under a direct invitation from the district court, the government relented to a two-level adjustment for acceptance only after Collins withdrew his factual objections to the PSIR. The government continued to resist the third level off and never walked back its reliance on Collins' pre-plea conduct. That reluctance fell short of "the meticulous fidelity to the plea agreement we require." Id. (citing United States v. E.V., 500 F.3d 747, 751 (8th Cir. 2007)). The district court understandably tried to "hold the government to the bargain they struck" but could not cure the breach as a nonparty. We conclude that the government breached Collins' plea agreement without cure.[1]

---

[1]Although there may be some merit to a rule that allows a party to cure the breach of a plea agreement, we need not address that issue today. Given our past silence, we decline to announce a cure rule here without the kind of "unequivocal retraction" other courts expect.

Collins suggests that the breach should permit him to withdraw his guilty plea. "There are two potential remedies for the government's breach of a plea agreement: remand for specific performance and withdrawal of the guilty plea." United States v. Van Thournout, 100 F.3d 590, 594 (8th Cir. 1996) (citation omitted). The district court is in a better position than we are to assess which remedy is most appropriate. United States v. Gomez, 271 F.3d 779, 782 (8th Cir. 2001).

## III.   CONCLUSION

We vacate Collins' sentence and remand to the district court to determine the proper remedy.

_____