# United States Court of Appeals
## For the First Circuit

No. 23-1522

MARGARET AND DAVID JESPERSEN,

Plaintiffs, Appellants,

v.

COLONY INSURANCE COMPANY,

Defendant, Third-Party Plaintiff, Appellee,

v.

JPKS MANAGEMENT LLC; PENUCHES SPORTS AND MUSIC COMPLEX LLC,

Third-Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Gelpí, Circuit Judges.

Bruce W. Felmly, with whom Benjamin B. Folsom, Graham W. Steadman, and McLane Middleton, Professional Association were on brief, for appellants.
William L. Boesch, with whom Sulloway & Hollis PLLC was on brief, for appellee.
Peter Chiesa on brief for City of Manchester, amicus curiae.

March 25, 2024

**BARRON**, **Chief Judge**.  This appeal concerns a suit that a married couple brought in the District of New Hampshire to recover from a restaurant owner's insurer for the injuries that they alleged that they suffered when one of them fell down the restaurant's stairs.  The District Court granted summary judgment to the insurer and denied the couple's motion for summary judgment.  We affirm.

## I.

## A.

The suit that underlies this appeal traces back to the suit that Margaret and David Jespersen, both New Hampshire residents, brought in New Hampshire state court against JPKS Management, LLC d/b/a Penuches Music Hall, and Penuches Sports and Music Complex, LLC d/b/a Penuches Grill.  The complaint in that suit set forth claims against those defendants for negligence, negligence per se, negligent misrepresentation, and violation of New Hampshire Revised Statutes Annotated ("RSA") § 354-A.[1]  It also alleged the following facts.

On May 28, 2018, the Jespersens were patrons of Penuches Music Hall in Manchester, New Hampshire, and were eating in that

---

[1] The complaint also alleged "loss of consortium" as a separate "count," and this "count" appears to derive from New Hampshire RSA § 507:8-a, which provides that, "[i]n a proper action, either a wife or husband is entitled to recover damages for loss or impairment of right of consortium whether caused intentionally or by negligent interference."

restaurant's "outdoor dining area," which is "located on the sidewalk in front of the restaurant." Margaret Jespersen is "functionally blind," and David Jespersen "is blind in one eye and severely vision impaired in his other eye."

The Jespersens were "using white probing canes to guide themselves through the establishment" and "asked a staff member to direct them to the restrooms." After the staff member "told them that the restrooms were downstairs," the Jespersens "asked if there was an elevator that they could use." The staff member responded "that there was no elevator available and directed them to a stairway."

Margaret Jespersen proceeded to walk down the stairs, but "her cane caught on the railing, and she lost her balance and fell down the stairs." Her fall resulted in "three fractures in her left ankle and one in her right ankle." When the paramedics arrived, "another Penuche[]s employee informed them . . . that there was in fact an elevator and [that] the paramedics could use it to transport Margaret up to the ground floor."

The complaint alleged that Margaret Jespersen "suffered severe injuries as a result of the Defendants' negligence in failing to inform [her] about, or refusal to allow her to use, the available elevator." The complaint also alleged that the defendants had "effectively denied Margaret access to the restroom . . . in violation of RSA [§] 354-A:16 and [§] 354-A:17," which in

- 3 -

relevant part concern discrimination "because of . . . physical . . . disability" in "places of public accommodation." N.H. Rev. Stat. Ann. § 354-A:16 to :17 (2022).

The complaint requested that "judgment be entered against Defendants, Penuches Sports and Music Complex, LLC d/b/a Penchues [sic] Grill, as well as JPKS Management, LLC, d/b/a Penuches Music Hall," that "Margaret Jespersen be awarded direct, compensatory, and enhanced compensatory damages in the maximum amount allowed in accordance with the law," that "David Jespersen be awarded damages for loss of consortium in the maximum amount allowed in accordance with the law," and that "all costs of this action be assessed against Defendants, including all reasonable attorney's fees, costs and expenses." The complaint also requested that the Jespersens "be awarded all other such relief as . . . deem[ed] just and proper."

Because the defendants failed to respond to the complaint, the state court entered a notice of default in August 2019. See Jespersen v. Colony Ins. Co., No. 21-cv-846, 2023 WL 3584607, at *3 (D.N.H. May 22, 2023). The Jespersens then moved in December 2019 for a final judgment based on the default. The defendants did not respond to this motion or appear at the hearing on the motion for entry of final judgment, which was held in August 2020. See id.

- 4 -

Two months later, in October 2020, the state court issued a final judgment for the Jespersens and awarded them $391,585.21. See id. This amount included $193,688.91 in compensatory damages for past medical expenses, future medical and counseling bills, lost wages, loss of consortium, and pain, suffering, and loss of enjoyment of life; plus an additional $100,000 for enhanced compensatory damages; plus $97,896.30 for attorney's fees and costs. See id.

**B.**

In February 2021, the Jespersens wrote a demand letter to Colony Insurance Company, which had issued a liability insurance policy that named "Penuches Music Hall, LLC" as the insured and that provided the insured with coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Based on that policy, the demand letter sought the payment of the award that the state court had granted to them in their suit against JPKS Management, LLC d/b/a Penuches Music Hall and Pencuhes Sports and Music Complex, LLC. See id. at *4. Colony responded to the demand letter, but the parties were unable to come to a resolution. See id.

The Jespersens initiated the suit against Colony that underlies this appeal in the District of New Hampshire in October 2021. The complaint sought "an Order compelling [Colony] to pay

- 5 -

the judgment rendered against its insured JPKS Management, LLC d/b/a Penuches Music Hall." Specifically, the Jespersens' complaint sought a "judgment in favor of [the Jespersens] and against Colony in the amount of $391,585.21" or, in the alternative, a "declaratory judgment [pursuant to RSA § 491:22 or 28 U.S.C. § 2201] that Colony is obligated to pay the full amount of the Judgment," plus attorney's fees, costs and expenses, and "all other such relief as this Court deems just and proper."

Before discovery, Colony moved for summary judgment, which the District Court denied. Then, after discovery, the Jespersens and Colony cross-moved for summary judgment. The District Court granted summary judgment to Colony and denied summary judgment to the Jespersens. See id. at *10.

In so ruling, the District Court first agreed with Colony that, as a matter of law, the insured had "breached the insurance contract" by failing to "notify [Colony] of Margaret's fall or the resulting suits 'as soon as practicable'" as Colony's insurance policy with the insured required it to do. Id. at *4. As the District Court concluded, "the undisputed facts cannot reasonably support a finding that [the insured] provided notice as soon as practicable." Id.

The District Court noted that New Hampshire courts "consider three factors" under New Hampshire law "in assessing whether there has been a substantial breach of a notice

provision -- 'the length of the delay [in notification], . . . the reasons for the delay[,] and whether the delay resulted in prejudice to the insurer.'" Id. (alterations in original) (quoting Wilson v. Progressive N. Ins. Co., 868 A.2d 268, 271 (N.H. 2005)). As to the first factor, the District Court pointed out that Colony "first received notice of Margaret's fall two years and nine months after the incident occurred," which the District Court concluded was a "lengthy delay." Id. As to the second factor, the District Court noted that there was "no reason or excuse for this delay in the record." Id. at *5. As to the third factor, the District Court rejected the Jespersens' contention that the lack of notice had not prejudiced Colony. See id.

Having ruled that the insured had breached the insurance contract by failing to provide the requisite notice pertaining to Margaret Jespersen's fall, the District Court turned its attention to the Jespersens' separate contention that, under what is known as the "compulsory insurance doctrine," Colony was not entitled to assert that breach as a ground for denying the Jespersens' attempt to recover under the policy. See id. at *6. The Jespersens had based this contention on a City of Manchester ("City") ordinance that provided in relevant part:

> (B) The City Clerk . . . may . . . license businesses . . . to encumber no more than half of the sidewalk area immediately adjacent to the building in which the business is located so that a minimum of half of the sidewalk is

maintained free and clear for pedestrian traffic. Each such license shall contain the following provisions:

. . . . (2) Each license shall be subject to the insurance provisions contained in § 115.60 of this code and shall be subject to the restrictions contained in § 115.44 of this code with the exception of times of operation.

Manchester, N.H., Code § 97.34(B) (2023). The "insurance provisions" referenced by the second subsection of the ordinance provided that an application for a license shall include:

A certificate of insurance that the applicant has been issued an insurance policy by an insurance company licensed to do business in the state, protecting the licensee and the city from all claims for damages to property and bodily injury, including death which may arise from operations under or in connection with the license. Such insurance shall provide combined primary and excess coverage which meet a $500,000 minimum limit; such policy shall provide for automobile liability insurance for owned, nonowned, and hire vehicles as applicable; and such policy shall provide that the policy shall not terminate or be cancelled prior to the expiration date except with 30 days' advance written notice to the city.

Id. § 115.60.

In pressing this ground for recovery from Colony, the Jespersens argued that the ordinance triggered the compulsory insurance doctrine. Under that doctrine, as the District Court explained, "[w]hen injured parties seek to recover under insurance policies issued pursuant to compulsory insurance laws . . .

- 8 -

'generally,'" the injured parties "are not subject to defenses arising out of the breach of conditions subsequent to the accident even though they would be available to the insurer as against the insured." Jespersen, 2023 WL 3584607, at *6 (quoting Steven Plitt, et al., Couch on Insurance § 106:27 (3d ed. 2023)). The District Court ruled, however, that the doctrine had no application to this case. Id. at *10. Accordingly, the District Court granted Colony's summary judgment motion based on Colony's defense that the insured had breached the insurance contract. See id. The Jespersens timely appealed.

## II.

We review cross-motions for summary judgment de novo. See Pac. Indem. Co. v. Deming, 828 F.3d 19, 22-23 (1st Cir. 2016). In doing so, we "view each motion separately and draw all reasonable inferences in favor of the respective non-moving party," id. at 23 (quoting Roman Cath. Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013)), to "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed," Easthampton Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 91 (1st Cir. 2019) (quoting Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004)). Because this complaint was "exclusively grounded in the law of [New Hampshire]" and arises under our diversity jurisdiction pursuant to 28 U.S.C. § 1332, "we look to

- 9 -

[New Hampshire] law for the substantive rules of decision." <u>Halsey</u> v. <u>Fedcap Rehab. Servs., Inc.</u>, No. 23-1351, 2024 WL 911754, at *5 (1st Cir. Mar. 4, 2024).

**A.**

We begin with the Jespersens' contention that the District Court erred in holding that, as a matter of law, Colony had a viable defense to the Jespersens' claims under Colony's insurance policy based on the insured's breach.[2] We do not agree.

The District Court concluded, "as a matter of law, that [the insured's] delay in notifying Colony was lengthy and unjustified, and it resulted in prejudice to Colony." <u>Jespersen</u>, 2023 WL 3584607, at *6. The Jespersens do not challenge the District Court's conclusions that there was a "lengthy delay" and no "reason or excuse for this delay in the record." <u>Id.</u> at *5-6. They challenge only the District Court's conclusion that, as a matter of law, there was prejudice.[3]

---

[2] Although the parties dispute whether Margaret Jespersen's fall is a covered "accident" under the insurance policy at all, we assume that the fall is covered under the policy because, even if it is, we conclude that Colony's notice defense precludes the Jespersens from recovering from Colony.

[3] The parties also dispute who bears the burden of demonstrating whether Colony is obligated to compensate the Jespersens under the insurance policy. But, even assuming that Colony has that burden, we conclude that the record demonstrates that, as a matter of law, Colony has established that it was prejudiced by the delay in notice and that the compulsory insurance doctrine does not apply.

- 10 -

The District Court explained that the record established as a matter of law that Colony was prejudiced, because the record established beyond dispute that the lack of timely notice pertaining to Margaret Jespersen's fall deprived Colony of "the opportunity to engage in settlement discussions prior to (or instead of) litigation." Id. at *5. The District Court also concluded that it was indisputable on this record that "[the insured's] (and thus Colony's) absence from the proceedings was consequential to the court and factored into its calculation of damages," as the state court "premised its grant of attorney's fees -- which amounted to roughly one-quarter of the damages awarded -- in part on [the insured's] unwillingness to participate in the case." Id. Indeed, the District Court explained, the lack of timely notice plainly left Colony "[un]able to defend [the insured] in the litigation." Id.

The Jespersens contend otherwise in part because they argue that, at the very least, the record suffices to show that Colony was at fault for not having received the notice pertaining to Margaret Jespersen's fall. The Jespersens here reprise an argument that they made below. They argue in this regard that Penuches Music Hall had obtained the insurance policy so that it could comply with the ordinance requiring it to obtain liability insurance but that the ordinance required the insurer to notify the City thirty days before the cancellation of any insurance

policy obtained pursuant to that ordinance. The Jespersens then go on to contend that Penuches Music Hall had refused to allow on-site inspections at the restaurant, which was required "for the [insurance policy with Colony] to remain in effect," and that, as a result, there were repeated failed attempts by Colony's insurance agent to inspect the restaurant in the months after Margaret Jespersen's fall. They note, too, that, as the District Court had recounted, the "insurance policy was ultimately cancelled in September 2018, a few months after the [Jespersens'] visit to Penuches, for failure to pay the premium." Id. at *3. Moreover, the Jespersens contend, "given the contentious relationship between the City and [the insured] and the vigilance with which the City enforced the compulsory insurance requirement against [the insured], had Colony actually given notice of the Policy's cancellation . . . the City would have likely investigated, and in doing so likely learned about the accident." Thus, they argue, "Colony contributed to its own prejudice."

This chain of reasoning depends, however, on quite a few speculative inferences -- namely, that if Colony had notified the City that the insurance policy had been cancelled (which itself did not occur until four months after the fall), then the City would have inspected the restaurant, the inspection would have uncovered the accident, and notice of the accident at that point would have been given to Colony. We agree with the District Court,

- 12 -

however, that such speculation cannot suffice to create a triable issue of fact as to whether Colony was at fault for not having received the notice pertaining to Margaret Jespersen's fall at the restaurant in a timely manner. See id. at *6; cf. Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 398 (1st Cir. 2012) ("This sort of purely conjectural assumption, drawn from an empty record, is insufficient to propel a cause of action beyond the summary judgment stage.").

Setting aside questions of Colony's fault for not having received the notice sooner than it did, the Jespersens separately argue that the District Court's prejudice ruling cannot be sustained because Colony "failed to submit any admissible evidence establishing that they were prejudiced as to all of the Jespersens' damages" (emphasis in original), particularly compensatory damages. But the Jespersens provide no reason for us to conclude that the insurer must prove prejudice as to all damages to prove prejudice, as they identify no precedent supporting such a surprising proposition. Moreover, the District Court's determination that there was some prejudice accords with the state-court judgment, which not only relied on the insured's "flagrant indifference to the plaintiffs' disabilities and the ready availability of an accommodation" to justify the enhanced compensatory damages but also, in justifying the award of attorney's fees, relied in part on the fact that the defendants

had "been totally unresponsive to this litigation" and showed "utter disregard of this case." Thus, we reject this ground for challenging the District Court's prejudice ruling.[4]

Finally, the Jespersens contend that the fact that there was a final judgment entered against the insured cannot, in and of itself, provide the basis for sustaining the finding of prejudice. But they of course do not dispute that the final judgment was part of the record or that a lower amount might have been given in that judgment had Colony been given timely notice. They contend instead that Colony cannot show prejudice based on the final judgment because Colony was required to submit evidence "establishing that it sought to strike or reopen the Final Judgment" rendered in state court but failed to do so. But to the extent that the Jespersens mean to argue that the possibility that Colony could have moved to strike or reopen the final judgment in and of itself made the District Court's prejudice ruling erroneous, we cannot agree. After all, the Jespersens point to nothing to indicate that Colony would have been able to have the final judgment set aside,

_____

[4] Because we conclude that the lack of timely notice prejudiced Colony given the basis for the state court's award of enhanced compensatory damages and attorney's fees, we need not address the Jespersens' separate contention that Colony was required to have "submitted . . . evidence suggesting that conditions of the accident scene materially changed so that it could not determine whether Plaintiffs' injuries were covered by the Policy" such that the delay in notice "prejudiced [Colony's] investigation of [the Jespersens'] claims."

stricken, or vacated.  See Nautilus Ins. Co. v. Gwinn Design & Build, No. 18-cv-633-JD, 2018 WL 6519071, at *1, *3 (D.N.H. Dec. 11, 2018) (finding prejudice where the state court denied a motion by the insurer to set aside a default judgment against the insured, which the insured had not provided notice of to the insurer, and where there was "no suggestion that an earlier motion to reconsider or to set aside the judgment would have been successful"); Hudson v. Musor, 519 A.2d 319, 321 (N.H. 1986) (explaining that the "decision to strike a default is ordinarily within the trial court's discretion").

Thus, on this record, we see no basis for overturning the District Court's determination that "no reasonable person could find that notice was given as soon as was reasonably possible" by the insured to Colony.  Jespersen, 2023 WL 3584607, at *4 (quoting Dover Mills P'ship v. Com. Union Ins. Cos., 740 A.2d 1064, 1066 (N.H. 1999)).  We therefore agree with the District Court that, as a matter of law, the lack of notice constituted a breach of the insurance contract, thereby releasing Colony from payment of the award that the Jespersens received from the final judgment.

**B.**

Given our conclusion as to the District Court's prejudice ruling, we next must address the Jespersens' contention that the District Court erred in ruling that, as a matter of law,

the compulsory insurance doctrine does not apply here. That ruling, too, turns on a question of New Hampshire law. See Peerless Indem. Ins. Co. v. Frost, 723 F.3d 12, 18 (1st Cir. 2013) ("When a state's highest court has yet to rule definitively on a question of state law, our task is to predict how that court likely would decide the issue."); Nw. Airlines, Inc. v. Pro. Aircraft Line Serv., 776 F.3d 575, 582 (8th Cir. 2015) (predicting how Minnesota's highest court would apply the compulsory insurance doctrine). And, once again, our review is de novo. See Pac. Indem. Co., 828 F.3d at 23.

The Jespersens contend that the District Court erred in concluding that the rationale that underlies the compulsory insurance doctrine -- to better effectuate the purpose of compulsory insurance laws that "are for the benefit of members of the public and not of the insured" -- has no application to this case due to the text of the ordinance at issue. Jespersen, 2023 WL 3584607, at *6-7 (quoting Plitt, Couch on Insurance § 106:27 (emphasis in original)). And the Jespersens are right that, although the ordinance at no point expressly states that it has the purpose of benefiting the public, it does require that the insurance that is obtained "protect[] the licensee and the city from all claims." Manchester, N.H., Code § 97.34(B) (2023) (emphasis added). In addition, the Jespersens make the point that, although the District Court reasoned that the phrase "protecting

- 16 -

the <u>licensee</u> and the <u>city</u> from all claims" in § 115.60 compels the conclusion that the ordinance is intended to protect <u>only</u> the licensees and the City, <u>see</u> <u>Jespersen</u>, 2023 WL 3584607, at *8 (emphasis added), "the persons at risk of injury or death would logically be members of the public" and that the ordinance requires insurance policies to cover "all claims." As a result, the Jespersens contend that the ordinance indicates an intention to benefit the public and that, as a result, the rationale for the compulsory insurance doctrine supports applying the doctrine here.

In assessing this contention, we emphasize that we do not understand the District Court to have rested its holding that the compulsory insurance doctrine has no application here solely on either the determination that the doctrine is unavailable because the ordinance expressly disclaims any intent to benefit the public or the determination that the doctrine is unavailable merely because the ordinance failed to state expressly that it is for the benefit of the public. Rather, we understand the District Court to have relied as an independent ground for its ruling on the more nuanced determination that a "public safety purpose" was not "particularly salient in the[] ordinances [at issue], such that it would justify deviating from longstanding New Hampshire precedent to extend the compulsory insurance doctrine to this novel set of circumstances" beyond the automobile liability insurance context. <u>Id.</u> at *7. And, reviewing de novo, <u>see</u> <u>Baker</u> v. <u>Smith</u>

- 17 -

& Wesson, Inc., 40 F.4th 43, 47 (1st Cir. 2022) (reviewing question of statutory interpretation de novo), we see no error in that conclusion, given that a federal court must "take care not to extend state law beyond its well-marked boundaries in an area . . . that is quintessentially the province of state courts," Markham v. Fay, 74 F.3d 1347, 1356 (1st Cir. 1996); see also Santiago v. Sherwin Williams Co., 3 F.3d 546, 549 (1st Cir. 1993) (explaining that "a plaintiff who 'selects a federal forum in preference to an available state forum may not expect the federal court to steer state law into unprecedented configurations.'" (quoting Martel v. Stafford, 992 F.2d 1244, 1247 (1st Cir. 1993))).

## 1.

As Colony correctly highlights, the only New Hampshire state court cases that apply the compulsory insurance doctrine under New Hampshire law concern automobile insurance policies. Those rulings are premised, moreover, on a provision of the New Hampshire Financial Responsibility Act, which expressly provides that motor vehicle liability policies shall be subject to the following provision:

> I. Absolute Liability. The liability of any company under a motor vehicle liability policy shall become absolute whenever loss or damage covered by said policy occurs, and the satisfaction by the insured of a final judgment for such loss or damage shall not be a condition precedent to the right or duty of the company to make payment on account of said loss or damage. No agreement between the

- 18 -

company and the insured after the insured has incurred liability for loss or damage covered by the policy shall operate to defeat the company's liability to pay for such loss or damage. Upon the recovery of a final judgment against any person for any loss or damage specified in this section, if the judgment debtor was, at the accrual of the cause of action, protected against liability therefor under a motor vehicle liability policy, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment.

N.H. Rev. Stat. Ann. § 264:18 (2022).

Furthermore, New Hampshire courts have relied on the explicit language in this provision to find the compulsory insurance doctrine to be applicable. For example, in Farm Bureau Automobile Insurance Co. v. Martin, 84 A.2d 823, 825-26 (N.H. 1951), the New Hampshire Supreme Court pointed to the mandate -- under a prior version of this provision -- that an insurer's "liability . . . become[s] absolute" upon the occurrence of a covered loss to hold that the provisions of an insurance policy obtained pursuant to the Act "cannot be used to defeat or avoid coverage" because "the liability of the insurer became absolute upon the happening of the accident."

We add, too, that it is hardly anomalous that the doctrine has thus far had such limited application under New Hampshire law. Every case cited in the insurance treatise sections on which the Jespersens rely for the proposition that there is a compulsory insurance doctrine concerns an automobile liability

- 19 -

insurance policy.  See Plitt, Couch on Insurance §§ 106:27-:28.[5] In addition, in a majority of states today, compulsory insurance and financial responsibility statutes in the automobile liability context explicitly deprive insurers of certain defenses or explicitly impose absolute liability.[6]  Indeed, courts in several

[5] See Gillard v. Mfr.'s Ins. Co. of Phila., Pa., 107 A. 446 (N.J. 1919) (same); Kruger v. Cal. Highway Indem. Exch., 258 P. 602 (Cal. 1927) (same); Ott v. Am. Fidelity & Cas. Co., 159 S.E. 635 (S.C. 1931) (same); Goldberg v. Preferred Accident Ins. Co. of N.Y., 181 N.E. 235 (Mass. 1932) (same); West v. Monroe Bakery, Inc., 46 So. 2d 122 (La. 1950) (same), abrogated on other grounds by Home Ins. Co. v. Highway Ins. Underwriters, 62 So. 2d 828, 831 (La. 1952); Royal Indem. Co. v. Olmstead, 193 F.2d 451 (9th Cir. 1951) (same); Pan-Am. Cas. Co. v. Basso, 252 S.W.2d 505 (Tex. Civ. App. 1952) (same); Milwaukee Ins. Co. v. Morrill, 123 A.2d 163 (N.H. 1956) (same); Am. Emps. Ins. Co. v. Sterling, 146 A.2d 265 (N.H. 1958) (same); Karp v. Aetna Cas. & Sur. Co., 201 N.Y.S.2d 421 (Mun. Ct. 1959) (same); Sandoval v. Chenoweth, 428 P.2d 98 (Ariz. 1967) (same); Jones v. State Farm Mut. Auto. Ins. Co., 155 S.E.2d 118 (N.C. 1967) (same); Lumbermens Mut. Ins. Co. v. Grayson, 422 S.W.2d 755 (Tex. Civ. App. 1967) (same); Anderson v. Aetna Cas. & Sur. Co., 432 S.W.2d 151 (Tex. Civ. App. 1968) (same); Strickland v. Hughes, 160 S.E.2d 313 (N.C. 1968) (same); Evans v. Am. Home Assurance Co., 166 S.E.2d 811 (S.C. 1969) (same); Kahla v. Travelers Ins. Co., 482 S.W.2d 928 (Tex. Civ. App. 1972) (same); Young v. Allstate Ins. Co., 282 S.E.2d 115 (Ga. 1981) (same); Chennault v. Dupree, 398 So. 2d 169 (La. Ct. App. 1981) (same); Johnson v. R & D Enters., 435 N.E.2d 1233 (Ill. App. Ct. 1982) (same); Ratcliff v. Nat'l Cnty. Mut. Fire Ins. Co., 735 S.W.2d 955 (Tex. App. 1987) (same); Kambeitz v. Acuity Ins. Co., 772 N.W.2d 632 (N.D. 2009) (same).

[6] See Ala. Code § 32-7-22(f)(1) (2023); Alaska Stat. § 28.20.440(f)(1) (2023); Ariz. Rev. Stat. Ann. § 28-4009(C)(5)(a) (2023); Colo. Rev. Stat. § 42-7-414(2)(a) (2024); Del. Code Ann. tit. 21, § 2902(f)(1) (2023); Haw. Rev. Stat. § 287-29(1) (2023); 625 Ill. Comp. Stat. 5/7-317(f)(1) (2023); Iowa Code § 321A.21(6)(a) (2023); La. Stat. Ann. § 32:900(F)(1) (2024); Me. Stat. tit. 24-A, § 2903 (2024); Minn. Stat. § 65B.49(3)(3)(a) (2023); Miss. Code Ann. § 63-15-43(3)(a) (2024); Mo. Rev. Stat. § 303.190(6)(1) (2023); Mont. Code Ann. § 61-6-103(5)(a) (2023); Neb. Rev. Stat. § 60-538 (2023); Nev. Rev. Stat. § 485.3091(5)(a)

- 20 -

of these states have applied the compulsory insurance doctrine precisely because of those explicit provisions. See, e.g., Torres v. Nev. Direct Ins. Co., 353 P.3d 1203, 1207 (Nev. 2015) (relying on a Nevada statute's clear statement that "no violation of the policy defeats or voids the policy" to hold that "no post-injury violation of a policy will release the insurer under the absolute-liability provision"). Conversely, in one state that does not have such explicit provisions, the state's highest court has declined to apply the compulsory insurance doctrine because of that lack of explicit provisions. See Warren v. Com. Standard Ins. Co., 244 S.W.2d 488, 490 (Ark. 1951).

---

(2023); N.H. Rev. Stat. Ann. § 264:18(I) (2023); N.J. Stat. Ann. § 39:6-48(a) (2023); N.Y. Veh. & Traf. Law § 345(i)(1) (Consol. 2024); N.C. Gen. Stat. § 20-279.21(f)(1) (2023); N.D. Cent. Code § 39-16.1-11(6)(a) (2023); Okla. Stat. tit. 47 § 7-324(f)(1) (2023); Or. Rev. Stat. § 742.456 (2023); 31 R.I. Gen. Laws § 31-32-34(f)(1) (2023); S.C. Code Ann. § 56-9-20(5)(b)(1) (2023); S.D. Codified Laws § 32-35-74(1) (2023); Tenn. Code Ann. § 55-12-122(e)(1) (2023); Tex. Transp. Code Ann. § 601.073(c) (2023); Vt. Stat. Ann. tit. 23, § 805 (2024) ("Waiver of defenses against injured party"); Va. Code Ann. §§ 46.2-479(1), (6) (2023); Wash. Rev. Code § 46.29.490(6)(a) (2023); W. Va. Code § 17D-4-12(f)(1) (2023); cf. Mass. Gen. Laws ch. 175, § 112 (2023) (containing "absolute liability" language but providing that an insurer "shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit . . . unless the insurance company has been prejudiced"); Mich. Comp. Laws §§ 257.520(f)(1), (6) (2023) (containing "absolute liability" language but providing that the insurer "shall not be liable on any judgment if it has not had prompt notice of and reasonable opportunity to appear in and defend the action in which such judgment was rendered").

- 21 -

True, there are cases that apply the compulsory insurance doctrine in the automobile liability context even in the absence of any express statutory bar to a notice defense. See Olmstead, 193 F.2d at 454; Allen v. Canal Ins. Co., 433 S.W.2d 352, 354 (Ky. 1968). But the Jespersens have identified only one case outside the automobile liability context -- Northwest Airlines -- that applies the doctrine based on a statute or ordinance that requires a party to obtain insurance but that does not expressly render null an insurer's notice defense. See Nw. Airlines, 776 F.3d 575. And, while the Jespersens appear to contend that we may fairly prophesy that the New Hampshire Supreme Court would follow Northwest Airlines and apply New Hampshire law as the Eighth Circuit there applied Minnesota law, we cannot agree. Cf. Butler v. Balolia, 736 F.3d 609, 610 (1st Cir. 2013) ("This . . . case requires a Boston-based federal court to make an informed prophesy . . . .").

The issue of the applicability of the compulsory insurance doctrine arose in Northwest Airlines in connection with an aircraft maintenance company that had obtained a liability insurance policy pursuant to a local ordinance requiring it to carry such insurance in order to operate at an airport. 776 F.3d at 576-77. After an accident occurred between the maintenance company and an airline, the airline informed the insurer about the accident, sued the insured maintenance company, received a default

judgment in its favor, then filed a garnishment suit against the insurer, who argued that the insured's "failure to provide notice and to cooperate extinguished [the insurer's] payment obligation." Id. at 578.

The Eighth Circuit held that, under Minnesota law, the compulsory insurance doctrine applied because it "is not necessarily limited to" the "context of statutes requiring auto liability insurance," and because, even though the ordinance at issue there lacked explicit language stating that the insurer was subject to absolute liability, the ordinance was "intended at least in part to protect injured third parties such as [the airline-claimant]." Id. at 580 (cleaned up). The court went on to explain, however, that the compulsory insurance doctrine "exists at a balance point between the interests of the injured party in recovering and the insurer in obtaining prompt notice and cooperation." Id. at 582. And the court then emphasized in relationship to that balance that two factors were "certainly relevant in [its] assessment of this unusual scenario." Id. at 582. Those two factors were that: "(1) beginning soon after [the airline-claimant] learned of the . . . policy and over a year before [the airline-claimant] filed suit, [the airline-claimant] gave [the insurer] actual notice of its claim, the lawsuit, and the possibility of a default judgment, and (2) it was [the insurer] who spurned the notice from [the airline-claimant], discontinued

communications, and, despite its actual knowledge, chose not to participate in the . . . litigation." Id.

Given the qualified nature of the Northwest Airlines ruling, we find it significant that neither of the two special features given such emphasis there obtains here. In addition to the fact that Colony "had no notice of the incident, the claim, or the litigation, nor any opportunity to participate in the matter, prior to the default judgment," there is nothing in the record to suggest that it was Colony that "spurned" notice or "chose not to participate" in the litigation notwithstanding actual knowledge of the claims. In fact, unlike in Northwest Airlines, where the claimant had notified the insurer prior to moving for default judgment, see id. at 577, here the record shows that the Jespersens, at least by October 2019 when they obtained a copy of the certificate of insurance that listed Colony as the insurer, knew that Colony was the insurer but did not provide Colony with notice prior to their motion for the entry of final judgment on the default in December 2019.

Moreover, although the court in Northwest Airlines stated that "courts have applied the [compulsory insurance] doctrine where the ordinance's clear purpose was to protect a class of the public to which the injured party belongs," id. at 580, and that even an ordinance "intended at least in part to 'protect[] injured third parties'" can trigger that doctrine, id. (alteration

- 24 -

in original), each of the four cases cited in Northwest Airlines to support that extension of the compulsory insurance doctrine itself concerned automobile liability insurance, see Olmstead, 193 F.2d 451; Young, 282 S.E.2d 115; Allen, 433 S.W.2d 352; Ott, 159 S.E. 635.

As a result, we cannot deduce from the Eighth Circuit's application of Minnesota law in the specific circumstances of that case that the New Hampshire Supreme Court would extend the compulsory insurance doctrine beyond the automobile liability insurance context in the differing circumstances of this case, at least given the terms of the ordinance at hand. As we have explained, the ordinance is far more oblique in purporting to dispense with an otherwise bargained-for notice defense than the only New Hampshire law that New Hampshire state courts have thus far held to have that consequence: the Financial Responsibility Act, which, as we have explained, expressly dispenses with a notice defense. Nor, unlike some ordinances from other states requiring the procurement of insurance outside the automobile liability context, does the Manchester ordinance even expressly state that the purpose of its requirement to obtain insurance "protecting the licensee and the city from all claims for damages to property and bodily injury, including death which may arise from operations under or in connection with the license," is to benefit not only the city and the insured but also the public more generally. See

Freehold, N.J., Code § 5.80.080(A) ("Any person obtaining a license for a sidewalk cafe or restaurant shall submit, for the protection of the borough and its representatives as well as the general public a comprehensive policy of liability insurance protecting the licensee and borough against any liability whatsoever occasioned by accident on or about the licensed property or any appurtenances thereto." (emphasis added)); Marietta, Ga., Code § 8-12-27-030(C) (requiring mobile-retail-food-establishment licensees to obtain insurance "protecting the licensee, the public and the city from all claims for damage to property and bodily injury, including death, which may arise from operation under or in connection with the permit" (emphasis added)).

Simply put, even accepting that the insurance policies obtained pursuant to the ordinance must cover claims brought by injured members of the public, it does not follow that the New Hampshire Supreme Court would construe the ordinance, based on that fact alone, to trump any notice defense that the insurer otherwise would have under a policy that would cover claims brought by such persons. And nothing in Northwest Airlines nor any other precedent from New Hampshire or elsewhere of which we are aware suffices to persuade us that the New Hampshire Supreme Court would conclude, on the strength of the ordinance, that the compulsory insurance doctrine should be extended to a realm in which it has not previously been applied in New Hampshire. Rather, we see no

error in the District Court's conclusion that a "public safety purpose" is not "particularly salient in the[] ordinances [at issue], such that it would justify deviating from longstanding New Hampshire precedent to extend the compulsory insurance doctrine to this novel set of circumstances." Jespersen, 2023 WL 3584607, at *7.

**2.**

The Jespersens do argue that "New Hampshire law requir[es] insurance policies -- and the ordinances integral to them -- to be construed liberally in favor of coverage and against the insurer" (emphasis in original). And it is true that the New Hampshire Supreme Court has said that "[i]f more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer." Great Am. Dining, Inc. v. Phila. Indem. Ins. Co., 62 A.3d 843, 846 (N.H. 2013) (quoting Brickley v. Progressive N. Ins. Co., 7 A.3d 1215, 1217 (N.H. 2010)). But the insurance policy at issue here is unambiguous in stating that "[n]o person . . . has a right . . . [t]o . . . bring [Colony] into a 'suit' asking for damages from an insured; or . . . [t]o sue [Colony] on this Coverage Part unless all of its terms have been fully complied with," including the policy term requiring the insured to "notify [Colony] as soon as practicable" about any claim or suit brought against the insured.

- 27 -

Thus, we are not faced here with a question of insurance-policy interpretation. We are faced with a question of interpretation of New Hampshire law concerning when, if ever, an ordinance triggers the compulsory insurance doctrine outside the automobile liability context. The rule of liberal insurance policy construction on which the Jespersens rely has no application to that question.

The Jespersens do also rely on New Hampshire cases supporting the idea that provisions of insurance policies obtained pursuant to compulsory insurance statutes cannot conflict with those statutes. See Santos v. Metro. Prop. & Cas. Ins. Co., 201 A.3d 1243, 1253 (N.H. 2019); Universal Underwriters Ins. Co. v. Allstate Ins. Co., 592 A.2d 515, 517 (N.H. 1991); Partridge v. USAA Life Ins. Co., No. 14-cv-170, 2015 WL 1268193, at *4 (D.N.H. Mar. 19, 2015). Those cases simply stand for the proposition, however, that a statutory insurance requirement trumps contrary language in a policy. They do not address the issue of concern here, which pertains to when a state statute or local ordinance suffices to trigger the compulsory insurance doctrine itself. As a result, they lend no support to the Jespersens' position.

### 3.

The Jespersens' final argument for applying the compulsory insurance doctrine here rests on statements by officials of the City. The Jespersens first point to a declaration

- 28 -

from the City Clerk -- filed in the District Court -- stating that the City's "compulsory insurance requirements are meant to protect the public and the City from acts or omissions committed by licensees."

As the District Court explained, though, the City Clerk had no special reason to know the legislative intention or purpose of the ordinance, as he is not a member of the City's Board of Aldermen and plays no role in the approval of City ordinances. And although the City Clerk issues the licenses that require the insurance policies to be obtained, see Manchester, N.H., Code § 97.34(B), that task does not require the Clerk to make determinations about whether a notice defense contained in an insurance policy obtained pursuant to the ordinance is enforceable or even whether the purpose of requiring the insurance policies is to benefit the public.

The Jespersens do also point to an amicus brief filed by the City. The brief argues that the public-benefitting purpose of the ordinance is apparent when construing the ordinance "as part of a comprehensive scheme protecting the public" rather than as an "isolat[ed]" measure. But we do not find in that assertion a persuasive reason to reject the District Court's ruling that the compulsory insurance doctrine does not apply here. Given the ordinance's text relative to the text of the New Hampshire Financial Responsibility Act and the texts of similar ordinances

from around the country requiring certain establishments to obtain insurance, the absence of any legislative history that would allow us to construe the ordinance's text to nullify an insurer's contractual notice defense, the fact that the ordinance is unrelated to the automobile liability context, and the absence of the circumstances deemed significant in <u>Northwest Airlines</u>, we cannot agree that the New Hampshire Supreme Court would extend the compulsory insurance doctrine here based on the City's contention about the ordinance's purpose.

### III.

For the foregoing reasons, the District Court's ruling granting summary judgment to Colony and denying summary judgment to the Jespersens is **<u>affirmed</u>**. Each party shall bear its own costs.